In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-08-010 CR


 ______________________



JOHN EVERETT FREEMAN, Appellant 



V.



STATE OF TEXAS, Appellee


 




On Appeal from the 221st District Court


Montgomery County, Texas


Trial Court No. 05-08-06816 CR






MEMORANDUM OPINION


 John Everett Freeman pled guilty, without a plea bargain, to the offense of
misapplication of trust funds, with the intent to defraud, in an amount of $500 or more. See
Tex. Prop. Code Ann. § 162.031 (Vernon 2007). The trial court found Freeman guilty, 
assessed punishment at ten years in prison, suspended the imposition of the sentence, and
placed him on community supervision for ten years. On appeal, Freeman challenges the
restitution requirement contained in the community supervision order. See Tex. Code Crim.
Proc. Ann. art. 42.037(a),(f)(1) (Vernon Supp. 2008) (Under certain circumstances, the trial
court may order the defendant to make restitution to a victim of the offense, including a
person who has compensated the victim for the loss to the extent that the person paid
compensation to the victim.).

 The Texas Legislature enacted Chapter 162 of the Texas Property Code to give
protection to materialmen in addition to that provided by the materialman's liens statutes. 
C&G, Inc. v. Jones, 165 S.W.3d 450, 454 (Tex. App.--Dallas 2005, pet. denied). Section
162.002, in pertinent part, provides that a "contractor . . . who receives trust funds or who has
control or direction of trust funds, is a trustee of the trust funds." Tex. Prop. Code Ann. §
162.002 (Vernon 2007). Under Chapter 162, construction payments are trust funds "if the
payments are made to a contractor or subcontractor . . . under a construction contract for the
improvement of specific real property in [Texas]." Id. § 162.001(a) (Vernon 2007). Also
loan receipts are trust funds under Chapter 162 "if the funds are borrowed by a contractor,
subcontractor, or owner . . . for the purpose of improving specific real property in [Texas],
and the loan is secured in whole or in part by a lien on the property." Id. § 162.001(b)
(Vernon 2007). The artisan, laborer, mechanic, contractor, subcontractor, or materialman
who labors or furnishes labor or material for the construction or repair of an improvement
on specific real property located in Texas is the beneficiary of any trust funds paid or
received in connection with the improvement. Id. § 162.003(b) (Vernon 2007). "A trustee
who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses,
disburses, or otherwise diverts trust funds without first fully paying all current or past due
obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the
trust funds." Id § 162.031(a) (Vernon 2007). "A trustee who misapplies trust funds
amounting to $500 or more in violation of this chapter, with intent to defraud, commits a
felony of the third degree." Id. § 162.032(b) (Vernon 2007). 

 Freeman signed a "Stipulation of Evidence" expressly detailing the elements of the
offense and stating he committed the offense. He does not challenge the voluntariness of his
judicial confession or guilty plea. Instead, he challenges the restitution requirement made
a condition of community supervision in the judgment; he argues the trial court abused its
discretion in ordering him to pay restitution to Bruce Tadych and Jeannie Tadych, and to
Robert Smith and Tonya Smith. 

 In July 2003, Robert Smith purchased a lot for "a little over $27,000" in a subdivision
in Montgomery County. Freeman's wife, Ethelyn Freeman, sold Smith the lot. Smith used
John Freeman's company, Regency Custom Homes, as the builder and Freeman as the
general contractor. The total amount of Smith's mortgage and construction loan was
$159,900, not including the cost of the lot. Freeman had a stroke, apparently in February
2004. Work stopped on the house in March 2004. The house was "55 percent, maybe 60
percent complete[.]" Smith explained that five liens were placed on the house. He testified
that Ethelyn Freeman told him the liens would be taken care of, and the house would be
completed. Smith indicated that Regency Custom Homes made draws on the loan even after
February. Freeman testified he is "100 percent disabled," did not work after the stroke, will
never work again, and receives social security disability.

 Smith explained that after the loan money was used up, he had to put $25,000 of his
own "out-of-pocket" money into the house to complete it. He described the $25,000 as
savings he had set aside as college funds for his daughter. At the time of trial, Smith testified
he was selling the house; he indicated the "profit excluding what we put into the house . . .
[w]ould only be about $15,000."

 In August 2003, Bruce Tadych purchased a lot from Ethelyn Freeman in the same
addition. Like Smith, Tadych hired Regency Custom Homes to build his house. Tadych
financed the house and lot with a loan of approximately $325,000. Approximately four
weeks after the pouring of the slab, the concrete company owner called and said he had not
been paid. Tadych testified another company filed a lien "for the building materials[.]" He
had to pay that company "out of [his] pocket." Tadych testified the mortgage company
wanted him to pay for the lien or they would not release any more money from the loan to
him, and the lender did not want the Freemans working on the house. 

 Tadych had to obtain another builder. Of the $325,000 loan, approximately $100,000
remained, and that amount was not enough to finish the house. Tadych indicated the new
builder, who finished the construction, had to use inferior material to finish out the house. 
Although the record is somewhat confusing, Tadych testified he lost over $121,000. 

 On appeal, Freeman argues the trial court had no authority to order restitution to the
Tadyches and the Smiths. He asserts the Smiths were not entitled to restitution because they
were not beneficiaries of the trust; they did not pay any of the lien holders out of their own
pockets; the lien holders released the liens for "current or past due obligations" after the
lender paid the lien holders out of undisbursed funds from the loan; there was no duty to the
Smiths, after Freeman ceased to be trustee, for costs the Smiths incurred to complete the
construction of their house; and the restitution order did not result from the offense for which
Freeman was convicted. Similarly, Freeman argues the Tadyches were not entitled to
restitution because they were not beneficiaries of the trust; the lien holders released the liens
for "current or past due obligations" after the lender paid the lien holders out of undisbursed
funds from the loan; there was no duty to the Tadyches, after Freeman ceased to be trustee,
for costs they incurred to complete the construction of their house; the Tadyches were able
to draw on the undisbursed funds held by the lender to pay the "current or past due
obligations"; and the restitution order did not result from the offense for which he was
convicted.

 Freeman asks that we remand this case to the trial court for deletion of the restitution
order from the judgment. On appeal, his reasons for asking for elimination of restitution
have to do with the validity or appropriateness of the order, rather than the amount or the
factual sufficiency of the record supporting the order. He asks that the requirement to pay
restitution be deleted, not that the amount be reduced. 

 The reporter's record reflects that at trial Freeman did not object to the trial court's
legal authority to issue the restitution order. See Barrera v. State, No. PD-1642-07, 2008 WL
4149709, at *1, *3 n.2 (Tex. Crim. App. Sept. 10, 2008) ("Because appellant did not
challenge at trial the trial court's legal authority to issue the restitution order, he forfeited the
right to challenge that legal authority on appeal."). Freeman's counsel argued:

 I ask the Court to place him on . . . deferred for the appropriate period of time
that the Court deems necessary, if they wish, him to pay any restitution for
whatever amount the Court sets up. But also, too, by placing him on deferred
if something happens later on and the Court wishes to adjudicate him, you can
still keep him on the hook for 20 years' worth of 200 bucks a month. 


The clerk's record contains a letter, written after the sentencing hearing, from the trial judge 
to counsel that indicates Freeman's trial counsel argued that "the liability of the persons who
misapplies trust funds is limited to the unpaid labor men's losses." This contention appears
to be an argument for limitation of restitution. In Idowu v. State, the Court of Criminal
Appeals explained, "[i]f a defendant wishes to complain about the appropriateness of (as
opposed to the factual basis for) a trial court's restitution order, he must do so in the trial
court, and he must do so explicitly." 73 S.W.3d 918, 921 (Tex. Crim. App. 2002). 

 The record contains references to two indictments against Freeman for misapplication
of trust funds. At the sentencing hearing, the prosecutor stated that one indictment had been
dismissed by agreement. Although the record does not contain the written agreement,
Freeman's brief states, "Cause No. 05-08-06817-CR was Dismissed, with the understanding
that the Trial Court would take the facts in Cause No. 05-08-06817-CR into consideration
when determining Appellant's punishment in Cause No. 05-08-06816-CR." The punishment
hearing contains testimony from both Bruce Tadych and Robert Smith. The judgment in
cause number 05-08-06816-CR contains the restitution requirement challenged in this appeal. 
The restitution order requires Freeman to pay $100,000 to Bruce and Jeannie Tadych and
$25,000 to Robert and Tonya Smith. Considering the agreement explained in Freeman's
brief, and the lack of any challenge in this Court by Freeman based on the agreement, we do
not understand Freeman as having urged in this appeal that the restitution ordered paid to the
Smiths should be deleted because of the dismissal of the indictment in cause number 05-08-06817-CR. 

 In the trial court, it appears Freeman challenged the factual basis for the order. On
appeal, Freeman's arguments seem to relate to the trial court's authority to order restitution
paid to the Smiths and the Tadyches. Yet in the trial court it appears he suggested that some
amount would be appropriate as part of a deferred adjudication. See Idowu, 73 S.W.2d at
921-22; see also Tex. R. App. P. 33.1; see generally Maloy v. State, 990 S.W.2d 442, 446
(Tex. App.--Waco 1999, no pet.) (Defendant did not preserve error, because she did not
specifically object to restitution ordered paid to the victim and the victim's insurer, and the
ground for any exclusion was not obvious from counsel's objections.).

 If Freeman's challenge on appeal is to the lack of a factual basis for the amount of
restitution ordered, we reject that argument. The testimony of Tadych and Smith provides
a sufficient factual basis for the amount of restitution ordered by the trial court as a result of
Freeman's conduct. 

 Appellant's issues are overruled. The judgment is affirmed. 

 AFFIRMED.


 _________________________________

 DAVID GAULTNEY

 Justice 

 
Submitted on October 22, 2008

Opinion Delivered October 29, 2008 

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.